Arthur I. **LENOWITZ**, Bi–Planning Security Corp. of New York

v.

**PHILADELPHIA STOCK EXCHANGE, INC.**

Civ. A. No. 79–4269.

United States District Court,
E. D. Pennsylvania.

Dec. 2, 1980.

Harold I. Geringer, Lian & Geringer, New York City, for plaintiffs.

Franklin Poul, Barry M. Klayman, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs in this securities action are Bi–Planning Security Corporation of New York, and its president, Arthur Lenowitz, both members of and registered specialists with the defendant Philadelphia Stock Exchange (PHILX). On February 15, 1975, Lenowitz, individually and as a representative of Bi–Planning, was appointed specialist on PHILX for options in the stock of Marriott Corporation. Lenowitz traded in Marriott options until November 15, 1977, at which time Marriott options were delisted from the exchange because the underlying security, Marriott Corporation stock, had dropped below ten dollars per share, and PHILX rules required the immediate delisting of the option in such a case. Accordingly, Lenowitz stopped trading in Marriott options.

On June 9, 1978, PHILX announced that, subject to approval by the Securities Exchange Commission (SEC), it intended to relist Marriott options, and it requested applications from members who were interested in becoming the specialist for Marriott options. After receiving applications from five members in addition to Lenowitz, the Options Committee of PHILX appointed Joseph F. Tomek, who had no prior experience as an options specialist, as the specialist for Marriott. Lenowitz appealed the selection of Tomek to the PHILX Board of Governors, which appointed an Advisory Board to hear the appeal. The Advisory Board held two hearings on Lenowitz' complaint, and filed a report with the Board of Governors recommending that the decision of the Op-

tions Committee appointing Tomek be affirmed. Lenowitz then appealed to the Board of Governors itself, which, after hearing oral argument, adopted the report of the Advisory Board.

Lenowitz contends that PHILX violated its own by–laws and regulations both during the process of selecting Tomek as the specialist, and during the appeals process, and argues that the failure of PHILX to comply with its own rules constitutes a violation of § 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f(b), as amended, (1975). Section 6 provides in part that an exchange must be structured so as to be able to

> enforce compliance by its members and persons associated with its members, with the provisions of this chapter, the rules and regulations thereunder, and the rules of the exchange.

Lenowitz also contends that PHILX is liable to him for breach of contract, on the ground that even after Marriott options were delisted, he remained the specialist in them, and was entitled to continue as the specialist after relisting, and on the ground that PHILX was bound to abide by its by–laws and regulations in its dealings with him.

Both parties now move for summary judgment.

### Defendant's Motion for Summary Judgment

### A. Lenowitz' Claim Under the Securities Exchange Act

■ PHILX contends that Lenowitz has failed to state a claim upon which relief may be granted under the Exchange Act, because § 6 does not grant a private right of action in favor of a member of an exchange.

On its face, § 6 does not confer a private right of action on any party. If there is such a right, it is necessarily an implied one. Lenowitz relies upon *Bright v. Philadelphia–Baltimore–Washington Stock Exchange*, 327 F.Supp. 495 (E.D.Pa.1971), as authority for his position. In *Bright*, the dispute involved an election for the board of governors of the exchange. The exchange contended that there were nine vacancies to be filled, and denied a seat on the board to the plaintiff, an exchange member who finished tenth in the balloting. The plaintiff established that under the by–laws of the exchange, a tenth vacancy had been created when an incumbent board member was elevated to vice chairman of the exchange, and therefore Judge Huyett of this court entered judgment in the plaintiff's favor. Judge Huyett reasoned that if the exchange were insulated from a member's suit to enforce its rules, then § 6, which requires establishment of rules, would be meaningless, because the exchange could violate them at will. 327 F.Supp. at 502. Subsequent developments in the law, however, call into question the continued viability of the *Bright* decision.

The Court of Appeals for the Third Circuit has not decided whether § 6 gives rise to a private right of action on behalf of a member of an exchange. In *dicta*, however, it has noted that it is reluctant to recognize such a cause of action even on behalf of shareholders, whom the 1934 Act was specifically intended to protect:

> [I]mplication of liability should be done reluctantly for the following reasons: first, accurate evaluation of the degree to which any particular rule represents SEC policy is often difficult, if not impossible . . .; second, imposition of liability might chill the process of self–regulation by creating fear of damaging liability; and finally . . . [w]e believe Congress intended to encourage self–regulation to invoke higher standards than could feasibly be implemented by Congress or the SEC, and we should tread carefully before interfering with that scheme.

*Landy v. Federal Deposit Insurance Corp.*, 486 F.2d 139, 166 n.23 (3d Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

Other circuits which have directly confronted the issue have held that § 6 does not create a right of action in favor of exchange members. In *Jablon v. Dean*

*Witter & Co.*, 614 F.2d 677, 680 (9th Cir. 1980), the court declin·d to find a private right of action on the ground that since § 6 neither confers rights on private parties, nor proscribes any conduct as unlawful, it does not reflect a congressional intent to create a private cause of action, (citing *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), discussed *infra*). Similarly, in *Lank v. New York Stock Exchange*, 548 F.2d 61, 66 (2d Cir. 1977), the court found after a review of the legislative history that § 6 was intended for the benefit of public investors, not members of the exchange, and that allowing suits by members of the exchange may work against the interest of investors, whose interests are often antagonistic to those of brokers.

Where courts have found a private right of action under § 6, it was for the protection of investors. Thus, in *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir. 1973), the court found a cause of action against an exchange for negligent failure to enforce its rules on behalf of individual investors who were victimized by a scheme to defraud by a member of the exchange. Similarly, in *Hughes v. Dempsey Tegeler & Co., Inc.*, 534 F.2d 156 (9th Cir. 1976) which also permitted suit against an exchange for failure to enforce its rules, the plaintiff was an investor, not a member of the exchange.

Recent decisions by the Supreme Court suggest that § 6 does not confer a private right of action upon either brokers or investors. In *Touche Ross, supra*, the Court held that no private right of action was conferred upon anyone by § 17(a) of the Securities Exchange Act, which requires brokers to keep such records as the SEC may prescribe. The Court noted that § 17 did not on its face create a right of action, and that the legislative history did not reflect any congressional intent to create such a right. The Court also noted that whether courts perceived a need to imply a right of action under a particular section in order to enforce it was irrelevant, inasmuch as provision for enforcement is a matter for Congress to decide. 442 U.S. at 575–76, 99 S.Ct. at 2489.

In *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), a shareholder in a mortgage trust brought suit under the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1 *et seq.*, contending that the trustees were guilty of fraud. The Court refused to recognize a private right of action under §˙206 of the Act, which makes it unlawful for an investment advisor to engage in any scheme to defraud. The Court noted that § 206 merely proscribes certain conduct, and "does not in terms create or alter any civil liabilities." 444 U.S. at 19, 100 S.Ct. at 247. Citing provisions of the securities laws which expressly create a private right of action, the Court pointed out that " 'when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.' " *Id.* at 21, 100 S.Ct. at 248.

The Court of Appeals has counseled that "[i]n interpreting liability provisions of the [securities] acts, we must respect recent Supreme Court teachings that militate against excessively expansive readings." *Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3d Cir. 1979). In light of *Touche Ross* and *Transamerica*, two of my colleagues in this district have recently ruled that § 6 of the Securities Exchange Act does not create a private right of action. *Hoover v. E.F. Hutton & Co., Inc.*, No. 79–3475 (E.D.Pa. June 24, 1980) (Cahn, J.); *Rankl v. Elkins, Stroud, Suplee & Co.*, No. 79–3187 (E.D.Pa. June 12, 1980) (VanArtsdalen, J.). In view of the evolution of the law since the *Bright* decision in 1971, its analysis is no longer persuasive, and I conclude that § 6 does not confer a private right of action on an exchange member. Defendant PHILX is therefore entitled to summary judgment on Lenowitz' claim under the Securities Exchange Act.

**B. *Lenowitz' Contract Claim***

██ Lenowitz also contends that he has stated a common law claim for PHILX'

breach of its "contract" with him.[1] Although his complaint is far from clear, Lenowitz in effect advances two claims under a contract theory. First, he contends that his status as specialist in Marriott options survived the delisting of Marriott options by PHILX. The fatal flaw in this claim is that Lenowitz has failed to allege any facts in support of it. Lenowitz cannot point to any agreement with the exchange to this effect; he has cited no regulations to support such a view; and he has not alleged that there is a practice on the exchange to reinstate automatically the same specialist who previously traded in a delisted option. The Advisory Committee appointed by the Board of Governors obviously concluded that Lenowitz had no right to continue as the specialist, and in light of the clear congressional intent to foster self-regulation in such matters, *Landy, supra,* its conclusion is entitled to substantial weight. At argument Lenowitz conceded that there is no evidence in support of his contention that he remained the specialist, and so I must assume that his argument is that I should simply declare that he continued as specialist as a matter of law. Inasmuch as Lenowitz has neither alleged any facts nor cited any law suggesting that his position is correct, I must agree with PHILX that with respect to this aspect of his contract claim it is entitled to summary judgment.

Second, Lenowitz contends that since he was a member of the exchange, its by–laws and regulations constituted a contract to which he is a party, and has a right to enforce. Again, Lenowitz has failed to make clear what particular provisions in the by–laws and what particular rules he relies upon as support for his position. He alleges that PHILX failed to follow its rules in ruling on his application. It does not follow, however, that simply because there are rules, that there is a contractual relationship between them entitling him to bring suit. Lenowitz further alleges that the Op-

tions Committee represented that it would give "special consideration" to the applications of former specialists, and that he was denied such consideration. Such an announcement by the Options Committee scarcely creates a contractual obligation. It was within its discretion to give such consideration or not to, because there is nothing in the by–laws or regulations requiring special consideration for the former specialist. Lenowitz can be said to have "relied" upon this representation in the sense that he believed it would enhance his chances, but he did not rely on it in the sense that the term "rely" is employed in the context of promissory estoppel, *i. e.,* he did not take action or forbear from action, to his detriment, on the basis of the Committee's representations, because he would have applied to be the specialist in any event.

PHILX points out that being named a specialist is a privilege conferred by the exchange, in that registration "may be revoked or suspended at any time by the Exchange." Rule 1020, Options Rules, Philadelphia Stock Exchange, Inc. This view is also apparently shared by the SEC. *See* Exchange Act Release No. 34–7432, 29 FR 13777 (October 6, 1964); Rule 11(b)–1(a)(1), Securities Exchange Act of 1934. As plaintiff, Lenowitz has the burden of pleading and proving the contract he seeks to enforce. On the facts of this case, the few facts which Lenowitz does allege simply would not, if proven, suffice to establish a contractual relationship between PHILX and himself.

Because Lenowitz has failed to establish that there are material facts at issue, which, if proven, would entitle him to relief on his contract claim, PHILX' motion for summary judgment will be granted.

---

1. Since Lenowitz has not stated a colorable federal claim, I plainly do not have pendent jurisdiction over his contract claim. Lenowitz avers in his complaint that he is a citizen of New York, and that PHILX is a Delaware corporation with its principal place of business in Philadelphia. Presumably, therefore, I have jurisdiction over his contract claim on diversity grounds. 28 U.S.C. § 1332.