Wayne E. PIERSON and Ruth E. Pierson, Plaintiffs,

v.

DEAN, WITTER, REYNOLDS, INC., Defendant.

No. 82–1045.

United States District Court,
C.D. Illinois,
Peoria Division.

Nov. 23, 1982.

Ronald E. Halliday, Greg N. Grimsley, Peoria, Ill., for plaintiffs.

Timothy Bertschy, Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Plaintiffs (the PIERSONS) filed this eight count complaint alleging statutory violations of the Securities and Exchange Act of 1934 ("ACT"), together with various common law counts. Subject matter jurisdiction is based on section 27 of the Act, 15 U.S.C. § 78aa. The common law counts are before this Court under the doctrine of pendent jurisdiction.

The facts in this case are still sketchy. On May 20, 1977, the Piersons opened a "non-discretionary margin account" with the Defendant (DEAN, WITTER) and placed $25,000 in the account. Through this account the Piersons traded in the purchase and sale of stocks and options on margin. All trading in this account was completed by February 28, 1979. Among the actions the Piersons complain of are:

1. That sales and purchases were not properly made and transmitted;

2. That Dean, Witter made sales and purchases contrary to specific instructions from the Piersons;

3. That options were allowed to expire as worthless when they were in fact "covered";

4. That sales and purchases were not properly posted to the account;

5. That the Piersons' margin account and margin position was therefore misrepresented to them by Dean, Witter;

6. That calls were made against the account which caused Dean, Witter to liquidate the account; and

7. That Dean, Witter promised to perform an audit of the account and later refused to perform the audit.

On these facts the Piersons allege violations of the following sections of the Securities Exchange Act of 1934:

I. Section 10(b) (15 U.S.C. § 78j) and Rule 10b-5 (17 CFR § 240 10(b)-5);

II. Section 15(c)(1) (15 U.S.C. § 78o(c)(1)) and the rules promulgated thereunder;

III. Section 15(c)(3) (15 U.S.C. § 78o(c)(3)) and the rules promulgated thereunder;

IV. Section 7 (15 U.S.C. § 78g) and Regulation T (12 CFR 220); and

V. Sections 6(b) (15 U.S.C. § 78f(b)) and 15A (15 U.S.C. § 78o-3).

In addition, the Piersons allege common law counts of breach of fiduciary duty, negligence and fraud.

Dean, Witter has filed a motion to dismiss each of these counts pursuant to Fed. R.Civ.P. 12(b)(6). The applicable standard is that the complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957) and *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 833 (7th Cir.1977). Dean, Witter has also requested this court to sever and compel arbitration of the common law claims.

## *Motion to Dismiss the Entire Complaint as Time-Barred by the Statute of Limitations*

Dean, Witter contends that the entire complaint is time-barred by the statute of limitations. Both parties agree that the applicable Illinois statute of limitations provides three years from the date of the transactions complained of in which to bring the action. Ill.Rev.Stat., Ch. 121½, Sec. 137.13(D); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 125–128 (7th Cir. 1972); and *Tomera v. Galt*, 511 F.2d 504, 508–509 (7th Cir.1975). They also agree that all trading in the account was complet-

ed by February 28, 1978. Since the complaint in this case was not filed until March 2, 1982, Dean, Witter contends that it is time-barred.

The Piersons concede that their action was filed more than three years from the date of the transactions complained of, but they contend that the statute of limitations should be tolled by the equitable doctrine of fraudulent concealment.

■ The equitable tolling doctrine is recognized in the Seventh Circuit under certain circumstances. *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir.1972). First, the plaintiffs' ignorance of the fraud must not be a result of a lack of diligence on his part. *Tomara v. Galt,* 511 F.2d 504 (7th Cir.1975). In addition, where the applicable period of time has elapsed, the plaintiff has the burden of showing that he exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud. *Hupp v. Gray,* 500 F.2d 993 (7th Cir.1974). "Relevant to this inquiry is the relationship of the parties, the nature of the fraud alleged, the opportunity to discover the fraud and the subsequent actions of the defendant." *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 539 (N.D.Ill.1981), citing *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir. 1969).

■ In this case the Piersons allege that on February 28, 1979 Dean, Witter agreed to perform a full audit of the account and that they relied upon this promise. They further allege that the promise was made to delay the Piersons and conceal Dean, Witter's negligent and willful misconduct. This allegation of fraudulent concealment is sufficient to invoke the equitable tolling doctrine up to the time it became clear that no audit would be performed. On June 27, 1979, Dean, Witter informed the Piersons that it refused to conduct the audit. Therefore, the Piersons had three years from that date to file their action. Since this suit was filed on March 2, 1982, it was filed within the statute of limitations, as tolled, and is not time-barred.

Dean, Witter also contends that the Piersons failed to plead the fraudulent concealment with the particularity required by Rule 9(b), Fed.R.Civ.P. Because this allegation of fraudulent concealment was specific enough to apprise Dean, Witter of the fraud claimed, thereby allowing it to frame a responsive pleading, the Court will deny this argument.

*Motion to Dismiss Counts II Through V for Failure to State a Claim upon which Relief can be Granted*

■ A private cause of action can be implied from the violation of a criminal or a regulatory statute not expressly providing one. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Whether an implied action is appropriate depends upon a consideration of these four factors:

"1. Whether the plaintiff is one of a class for whose especial benefit the statute was enacted;

2. Whether there is an indication of legislative intent to create or deny such remedy;

3. Whether such a remedy would be inconsistent with the underlying legislative purpose; and

4. Whether the cause of action is one traditionally relegated to state law."

*Cort,* supra, at 78, 95 S.Ct. at 2088. In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–246, 62 L.Ed.2d 146 (1979), the Supreme Court stated that the question whether a statute creates a cause of action by implication is basically a matter of statutory construction and that what must ultimately be determined is whether Congress intended to create the private remedy asserted. Of the four factors listed in *Cort,* supra, the first three criteria—the language and focus of the statute, its legislative history and its purpose—are most important and form the traditional basis for discerning legislative intent. *Touche Ross and Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).

1. *Count II, Section 7, (15 U.S.C. 78g) and Regulation T., (12 CFR § 220)*

█ Section 7 and Regulation T are aimed at preventing the excessive use of credit for the purchase and carrying of securities, and the great weight of authority disallows a private remedy for a violation of these provisions. In *Stern v. Merrill Lynch, Pierce, Fenner and Smith*, 603 F.2d 1073 (4th Cir.1979), the Court determined that plaintiffs did not meet the "class benefited" requirement and therefore disallowed a private right of action. Specifically, the Court found that the purpose of the statute was to regulate the credit market and stabilize the stock market, and the protection of the investor was only a "by-product". Other cases simply state that nothing in the legislative history indicates that Congress intended to provide a remedy for borrowers. *Gilman v. Federal Deposit Insurance Corporation*, 660 F.2d 688 (6th Cir.1981); *Gutter v. Merrill Lynch, Pierce, Fenner and Smith*, 644 F.2d 1194 (6th Cir.1982); and *Siedman v. Merrill Lynch, Pierce, Fenner and Smith*, 465 F.Supp. 1233 (S.D.N.Y.1979).

The cases which the plaintiff cites for the proposition that there is a private right of action under Section 7 pre-date *Touche Ross*. However, they do not pre-date *Touche Ross* by such a great length of time that they would qualify under the "long standing judicial acceptance" exception set forth in footnote 19 in *Touche Ross*. Therefore, the defendant's motion to dismiss Count II for failure to state a claim upon which relief can be granted is ALLOWED.

2. *Count III, Section 6(b) (15 U.S.C. 78f(b)) and Section 15A (15 U.S.C. 78o–3).*

█ Sections 6(b) and 15A authorize stock exchanges and broker-dealer associations to promulgate rules by which their organizations will operate. Although several Circuits implied private rights of action under these exchange rules, these cases are being reassessed in light of *Touche Ross*.

This reassessment is taking place along two lines. Under *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir.1980), and its progeny, *Kaufman v. Magid*, 539 F.Supp.

1088, 1089 (D.Mass.1982); *Baselski v. Paine, Webber, Jackson and Curtis, Inc.*, 514 F.Supp. 535 (N.D.Ill.1981); *Pittsburgh Terminal v. Baltimore and Ohio Railroad Co.*, 509 F.Supp. 1002 (W.D.Pa.1981); and *Lenowitz v. Philadelphia Stock Exchange*, 502 F.Supp. 428 (E.D.Pa.1980), the Court analyzes § 6(b) and § 15A and finds no Congressional intent to provide a private right of action under any exchange rule. Under *Leist v. Simplot*, 638 F.2d 283 (2nd Cir. 1980), and other cases from the Second Circuit, *Picard v. Wall Street Discount Corporation*, 526 F.Supp. 1248 (S.D.N.Y.1981); and *Thompson v. Smith, Barney, Harris, and Upham*, 539 F.Supp. 859, 865 (N.D.Ga. 1982), the Court examines the particular exchange rule under the *Cort-Touche Ross* analysis to determine whether there should be a private right of action under that rule. These cases characterize the *Jablon* approach as "overbroad".

There are two Seventh Circuit cases which indicate that this latter approach may be appropriate. *Sanders v. John Nuveen and Co., Inc.*, 554 F.2d 790 (7th Cir. 1977); and *Buttrey v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 410 F.2d 135 (7th Cir.1969). They each state:

"What emerges is that whether the courts are to imply Federal civil liability for violations of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a Federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation."

*Buttrey*, supra, at 142. However, these cases are pre-*Touche Ross*.

At least one district court case from the Northern District of Illinois follows the *Jablon* approach. *Baselski v. Paine, Webber, Jackson, and Curtis, Inc.*, 514 F.Supp. 535 (N.D.Ill.1981). In light of the restrictive language in *Touche Ross*, this Court will follow the *Jablon* approach. Accord-

ingly, Dean, Witter's motion to dismiss Count III is GRANTED.

### 3. *Count IV, Section 15(c)(1) (15 U.S.C. 78o(c)(1)).*

Section 15(c)(1) is the broker-dealer anti-fraud provision applicable to over-the-counter transactions and transactions on exchanges of which the broker-dealer is not a member. In this respect, it is a counterpart of § 10(b) and Rule 10b–5 which is the general anti-fraud provision applicable to "any security registered on a national securities exchange or any security not so registered".

None of the cases that plaintiff cites supports the proposition that other courts have implied a private right of action under § 15(c)(1). Nor is there any authority for the contrary proposition. Therefore, this appears to be a question of first impression which should be resolved according to the *Touche Ross* analysis.

### A. *Language and Focus of the Statute*

There is no express grant of a private right of action in the text of § 15(c)(1).

However, the statute clearly proscribes fraudulent conduct in the sale of securities and therefore an intent to confer a private right of action can be implied from the focus of this statute.

### B. *Legislative History*

The Court has not found and the parties do not cite any legislative history which indicates that Congress intended to provide a private right of action for violation of this Section.

### C. *Purpose of Regulatory Framework*

Section 15(c)(1) is very similar to § 10b in that both provisions proscribe the use of any manipulative, deceptive, or other fraudulent device or contrivance in the purchase or sale of any security. The provisions differ only in that § 15(c)(1) applies to (1) brokers and dealers; and (2) securities traded on an over-the-counter market or securities traded on a national securities exchange of which the broker-dealer is not a member.[1]

---

1. § 15 of the Securities Exchange Act of 1934 provides:
 "Use of manipulative or deceptive devices; contravention of rules and regulations
 (c)(1) No broker or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange of which it is a member by means of any manipulative, deceptive, or other fraudulent device or contrivance, and no municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall for the purposes of this paragraph, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent."
 § 10(b) of the Securities Exchange Act of 1934 provides:
 "Manipulative and deceptive devices
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the

mails, or of any facility of any national securities exchange—
 \* \* \* \* \* \*
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
 Rule 10b–5 promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934 provides:
 "Employment of manipulative and deceptive devices.
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a

■ It appears from an examination of the cases that § 10(b) reaches those cases of fraud in the trading of securities which would be covered under § 15(c)(1). In *Fratt v. Robinson,* 203 F.2d 627 (9th Cir. 1953), the Court held that § 10(b) of the 1934 Act embraces stock transactions in which no phase of a stock exchange is involved. A private right of action under § 10(b) arises even though the transaction is conducted directly between the buyer and seller and not through a securities exchange or an organized over-the-counter market. *Hooper v. Mountain States Securities Corporation,* 282 F.2d 195 (5th Cir.1960), and *Schine v. Schine,* 250 F.Supp. 822 (S.D.N.Y. 1966). *See also, Maher v. J.R. Williston and Beane, Inc.,* 280 F.Supp. 133 (S.D.N.Y.1967). Because sections 10(b) and 15(c)(1) are largely coterminous and because securities fraud claims can be privately enforced under § 10(b) and Rule 10b–5, it would not further the purpose of the regulatory framework to allow an implied private right of action under § 15(c)(1).[2]

■ In consideration of the three relevant factors set out in *Touche Ross,* this court finds no Congressional intent to imply a private right of action under § 15(c)(1) of the Securities Exchange Act of 1934 and therefore Dean, Witter's motion to dismiss Count IV is GRANTED.

4. *Count V, Section 15(c)(3) (15 U.S.C. 78o(c)(3)).*

■ Section 15(c)(3) applies to brokers-dealers and requires compliance with rules that the SEC adopts pursuant to this section. These rules must be "necessary or appropriate in the public interest or for the protection of investors to provide safeguards with respect to the financial responsibility and related practices of brokers and dealers including, but not limited to, the acceptance of custody and use of customers' securities and the carrying and use of customers' deposits or credit balances". In *Siedman v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 465 F.Supp. 1233 (S.D.N.Y. 1979), the Court held that no private right of action could be implied under Rule 15(c)3–3(b) promulgated under § 15(c)(3). Specifically, the Court held that unlike Rule 10b–5 which is aimed at preventing fraud upon the customer, Rule 15(c)3–3(b) provides a standard of conduct for the broker-dealer for the purpose of insuring the orderly operation of the exchange. Furthermore, the court found that a private right of action would not further the legislative scheme since it would serve to benefit individual investors and not the market as a whole.

In *Touche Ross and Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82, the Supreme Court held that § 17(a) of the Securities and Exchange Act of 1934 does not create an implied private right of action. Section 17(a) of the 1934 Act simply requires brokers-dealers to keep such records and file such reports as the Commission may prescribe. The court found that the purpose of this statute was to provide the Commission, the exchange, and other authorities with sufficiently early warning to enable them to take appropriate action to protect investors before the financial collapse of the particular broker-dealer involved. The court found no intent to provide a private right of action to any individual. Section 15(c)(3) has a similar purpose of protecting the integrity of the stock market as a whole rather than protecting any individual investor.

Therefore, this Court finds that there is no evidence of a Congressional intent to create a private right of action under § 15(c)(3) of the Securities Exchange Act of 1934. Accordingly, it is ordered that Dean,

fraud or deceit upon any person, in connection with the purchase or sale of any security."

2. Courts which have examined the similarity between § 10(b) of the Securities and Exchange Act of 1934 and § 17(a) of the Securities Act of 1933 have reached the opposite result. *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1979) and *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223 (7th Cir.1977). In *Kirshner,* supra, the court noted "that there was little practical point in denying the existence of an action under § 17 once it is established that an aggrieved buyer has a private action under § 10(b) of the 1934 Act."

Witter's motion with respect to Count V is GRANTED and Count V is dismissed.

### Motion to Sever and Compel Arbitration of the Common Law Counts

 Dean, Witter has also asked this court to compel arbitration of the state law counts of breach of fiduciary duty, negligence and fraud. The Customer's Agreement signed May 20, 1977, by the Piersons contains a broad mandatory arbitration provision.[3] The agreement also provides that the laws of the State of New York govern its enforcement. Because under New York law punitive damages are unavailable in an arbitration award, *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.2d 831, 353 N.E.2d 793 (Ct.App.1976), Dean, Witter argues that the Piersons have knowingly and willingly waived their right to a full legal remedy. I cannot agree.

First, I am not convinced that the wording of the arbitration provision would ordinarily and reasonably be construed to cover such claims as fraud and breach of fiduciary duty. Although there are cases which hold otherwise, *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill. 1981) and *Weissbuch v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 558 F.2d 831 (7th Cir.1977), based on the facts in this case I am not persuaded that the arbitration provision applies.

In addition, the Piersons agreed to arbitration under New York law, but they did not specifically agree to waive their right to a full legal remedy including punitive damages. Because they did not specifically agree to waive their right to punitive damages, I cannot thrust that harsh result upon them. Accordingly, Dean, Witter's motion to sever and compel arbitration of the state

claims is DENIED. Count VII alleging negligence as well as intentional conduct is dismissed because it contains inconsistent theories of recovery. The Piersons have 20 days to refile their negligence count.

### Motion to Strike Claim for Attorney Fees Under the Securities Exchange Act of 1934

 Finally, Dean, Witter has requested this Court to strike that portion of the Piersons' complaint which seeks recovery for attorney fees under the Securities Exchange Act of 1934. Dean, Witter claims that attorney fees are not recoverable for violations of the Federal Securities Laws. To the extent that this is a motion to strike under Fed.R.Civ.P. 12(f), it is neither an authorized nor a proper way to procure the dismissal of part of the complaint. Wright & Miller, Federal Practice and Procedure: Civil § 1380. To the extent that it is a motion to dismiss under Fed.R.Civ.P. 12(b)(6), it does not appear to the court beyond doubt that the Piersons can prove no set of facts which would entitle them to attorney fees. Accordingly, this motion is DENIED.

### CONCLUSION

1. Dean, Witter's motion to dismiss the entire complaint as time-barred by the statute of limitations is DENIED.

2. Dean, Witter's motion to dismiss Counts II through V because of the unavailability of a private right of action is GRANTED.

3. Dean, Witter's motion to sever the common law count of breach of fiduciary duty, negligence and fraud and compel arbitration is DENIED. Count VII is

---

**3.** "Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."

dismissed and the Piersons have 20 days to refile this count.

4. Dean, Witter's motion to strike the Piersons' prayer for attorney fees is DENIED.