**John CORBEY, Plaintiff,**

v.

**Brooks GRACE, and A.G. Becker Paribas, Inc., a New York corporation, Defendants.**

Civ. No. 4–84–736.

United States District Court,
D. Minnesota,
Fourth Division.

March 29, 1985.

Dale Thornsjo, Minneapolis, Minn., for plaintiff.

J.D. Jackson, Tracy Van Steenburgh, Dorsey & Whitney, Minneapolis, Minn., for defendant A.G. Becker Paribas, Inc.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff John Corbey brought this action for damages against defendants Brooks Grace and A.G. Becker Paribas, Inc. (Beck-

er), alleging violations of federal and state securities laws and common law violations. Jurisdiction is alleged under 28 U.S.C. § 1331, 15 U.S.C. § 78aa, and 28 U.S.C. § 1337. Jurisdiction of the state claims is founded upon pendent jurisdiction. This matter is now before the court upon the motion of Becker to dismiss.

*Factual Background*

The following facts are alleged by plaintiff in his complaint and are taken as true for the purposes of this motion to dismiss under Federal Rules of Civil Procedure 12(b)(6).

Becker is a national securities broker-dealer with an office in Hennepin County, Minnesota. At the time of this dispute Brooks Grace was employed by Becker as a securities salesman. Corbey alleges numerous securities violations by the defendants arising from Grace's successful efforts to have Corbey open a margin account and engage in trading on margin and from the subsequent unauthorized trading in the account by Grace.

Prior to the transactions at issue here, Corbey maintained a security account with Becker. Corbey alleges in the complaint that his investment needs and objectives were conservative because he had irreplaceable income and savings and was responsible for monthly nursing home expenses for his wife. Corbey further alleges that Grace knew this background information and that accordingly Corbey's account should have been limited to stable and income-producing securities, designed for a steady flow of income.

Nevertheless, Grace represented to Corbey that because the stock of Analyst International, Inc. was guaranteed to rise in value, he should purchase on margin. In fact, the stock was a volatile and speculative security but Corbey was never informed of this information. In addition, the defendants never fully explained the fundamental aspects of a margin account to Corbey. They simply offered to extend credit or arrange for a loan for Corbey, and ultimately they did extend credit by opening the margin account. Thus, Corbey was not informed that if the stock held on margin was to diminish in value, Becker would be required to send a "margin call", which would require Corbey to send additional sums of money to Becker in order to retain the stock in the margin account. Otherwise, Becker would by law be forced to sell such stock to keep the account within legal limits.

After these conversations with Grace, Corbey decided to sell warrants of Chrysler Corporation from his security account to pay for stock of Analysts International, Inc. This was subsequently purchased on margin on or about July 27, 1983. Corbey alleges that this transaction ultimately resulted in losses in excess of $30,000. Subsequently, Grace purchased an additional 800 shares of Analysts International, Inc. on or about October 11, 1983 for Corbey's account without Corbey's approval. When Corbey was notified of the purchase, he demanded immediate recission of the transaction. Even though the demand for recission came within 7 days of the original purchase order, the time period allowed for recission, Grace informed Corbey that the transaction could no longer be rescinded. Corbey alleges that this transaction ultimately resulted in losses in excess of $30,-000. This action was filed by Corbey on July 18, 1984, and an amended complaint was filed on October 11, 1984.

*Discussion*

Becker is moving to dismiss with prejudice those parts of counts one and two which allege violations of section 15(c)(1) and rules 15c 1–2, 15c 2–5, and 10b–3, and count ten. It seeks to dismiss all remaining counts without prejudice.

*Section 15 Claims*

In counts one and two of the complaint Corbey asserts in part that the willfully fraudulent and deceptive conduct of defendants violates section 15(c)(1) ot the Securities Exchange Act of 1934, 15 U.S.C. § 78*o* (c)(1) and rule 15c 2–5, 17 CFR § 240.15c 2–5, promulgated thereunder. Section 15(c)(1) provides that brokers and dealers are prohibited from making use of

the mails or any means of interstate commerce "to effect any transaction in, or to induce the purchase or sale of, any security" in over-the-counter transactions and transactions on exchanges of which the broker-dealer is not a member by means of any "manipulative, deceptive, or other fraudulent device or contrivance." 15 U.S.C. § 78*o* (c)(1). It is a counterpart to section 10(b) and rule 10b–5, the general antifraud provisions applicable to "any security registered on a national securities exchange or any security not so registered". Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b). Becker argues that this claim should be dismissed because there is no private right of action under section 15(c)(1) or its rules. Corbey asserts that section 15(c)(1) contains within it a valid private right of action against broker-dealers.

The central inquiry to such a determination is whether Congress intended to create, either expressly or by implication a private cause of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979). The language and focus of the statute, its legislative history, and its purpose are the factors traditionally relied upon in determining legislative intent. *Id.* at 575–76, 99 S.Ct. at 2488–89.

While there is no express grant of a private right of action in section 15(c)(1), the statute does proscribe fraudulent conduct in the sale of securities. Thus, it is possible to argue that an intent to confer a private right of action can be implied from the focus of the section. *See Pierson v. Dean, Witter, Reynolds, Inc.*, 551 F.Supp. 497 (C.D.Ill.1982).

The remaining *Touche Ross* factors support a conclusion that no implied private right of action exists, however. Neither party cites to any legislative history which indicates that Congress intended to provide a private right of action for violation of this section. Corbey contends, however, that the express reference to the section in the limitations period of section 29 of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78cc(b), evidences that a cause of action exists. This court is not persuaded by the interpretation given to the legislative history of section 29 in holding that a private right of action exists under section 15(c)(1). *Maher v. J.R. Williston & Beane, Inc.*, 280 F.Supp. 133, 137 (S.D.N.Y.1967), relied on the legislative history of section 29 in finding a private right of action under section 15(c)(1). The court stated that the provision in section 29(b) establishes a limitation period for violation of section 15(c) and then cited a 1950 Yale law review article taking the view that the amendment of section 29 to include this limitations period gives rise to the implication that Congress had always assumed that private actions under section 15(c) were available.

The amendment to section 29 should not be read so broadly, however. The limitation period of section 29, by its express terms, applies only to actions brought under section 29 itself. *Douglas v. Glenn E. Hinton Inv., Inc.*, 440 F.2d 912, 914 (9th Cir.1971). Certain securities contracts are voided by section 29(b) if they violate any provision of the Securities Exchange Act of 1934 or any rule or regulation thereunder. Section 29(b) further provides that no contract shall be deemed void by reason of the violation of any rule or regulation prescribed pursuant to section 15(c)(1) unless an action is brought within one year of discovery of the violation. Thus, section 29 creates substantive rights of its own, including a statute of limitations for those claims brought under it and based on a violation of section 15(c)(1). This does not provide any support for Corbey's claims under section 15(c)(1) because the source of his rights must be found, if at all, in section 15(c)(1), the substantive provision which he seeks to enforce. *Touche Ross & Co.*, 442 U.S. at 577, 99 S.Ct. at 2489. The 1938 amendment to section 29 to include the limitations provision is evidence of Congressional intent on section 29 alone.

The purpose of the statute is the final traditional factor used to determine legislative intent. Courts addressing the purpose of the Act and section 15(c)(1) after the

*Touche Ross* decision have found that because of the similarities between section 15(c)(1) and section 10(b), it would not further the purpose of the regulatory framework to allow an implied private right of action under section 15(c)(1). *Pierson v. Dean, Witter, Reynolds, Inc.,* 551 F.Supp. at 502–03; *see also Berk v. Oppenheimer & Co., Inc.,* Fed.Sec.L.Rep. ¶ 99,603 (N.D. Ill.1983); *Chapman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L. Rep. ¶ 99,419 (D.Md.1983). Both provisions proscribe the use of any manipulative, deceptive, or other fraudulent device or continuance in the purchase or sale of any security. The protections provided by section 15(c)(1) are all subsumed within the provisions of section 10(b). The private right of action under section 10(b) and rule 10b–5 encompasses fraud by broker-dealers involving over-the-counter transactions or transactions on exchanges of which the broker-dealer is not a member. *Pierson v. Dean, Witter, Reynolds, Inc.,* 551 F.Supp. at 503; *see Superintendent of Ins. v. Bankers Life and Casualty Co.,* 404 U.S. 6, 10, 92 S.Ct. 165, 167, 30 L.Ed.2d 128 (1971); *Hooper v. Mountain States Sec. Corp.,* 282 F.2d 195 (5th Cir.1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); *Fratt v. Robinson,* 203 F.2d 627 (9th Cir.1953).

The private remedy for this type of fraud must be found in section 10(b) and not in section 15(c)(1). In a parallel situation, the Eighth Circuit Court of Appeals held there is no private right of action in section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 155 (8th Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The court found that section 17(a) does not confer in its terms a private cause of action to a purchaser and refused to imply such a right noting that Congress expressly provided a remedy to purchasers in section 12(2) of the '33 Act. Similarly, section 10(b) provides a remedy to those claiming wrongs under section 15(c)(1). It is true that the similarities in language could cut in favor of finding that Congress intended

to create a private right of action under both sections. Yet, the Supreme Court's acquiesence in implying a private right of action under section 10(b) was in part based upon the 25 year-old recognition by the lower federal courts of an implied action under § 10(b). *Touche Ross,* 442 U.S. at 577–78 n. 19, 99 S.Ct. at 2489–90 n. 19. No such longstanding lower-court interpretation supports section 15(c)(1). Furthermore, *Shull* presents an analogous situation where no implied private right of action was found under section 17(a) for purchasers even though its antifraud provisions are also similar to section 10(b). *See Shull,* 561 F.2d at 155.

The weight of authority on the traditional factors of legislative intent support a conclusion that no implied right of action exists. The cases cited by plaintiff either do not address the issue of whether an implied cause of action exists under section 15(c)(1) or are pre-*Touche Ross* decisions. Accordingly, the court finds that no private right of action exists under section 15(c)(1).

*NASD Rules*

█ The motion to dismiss Corbey's claims under sections 1, 2, 18, and 27 of the NASD Rules of Fair Practice requires the court to engage in the same analysis of legislative intent. It is unsettled in this circuit whether a private cause of action is available for damage to a customer through a violation of a private trade association rule. *See Harris v. Stifel, Nicolaus & Co., Inc.,* 600 F.2d 139, 146 (8th Cir. 1979).

Congress had not expressly authorized private actions for violations of NASD rules. The complaint does not specify the statutory section, if any, under which Corbey claims a private action may be implied. Courts that have examined possibly relevant sections of the 1934 Act have found they neither "confer rights on private parties nor proscribe any conduct as unlawful," *Touche Ross v. Redington,* 442 U.S. 560, 569, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), and cannot, by their very terms, indicate a legislative intent to create a pri-

vate cause of action. *See, e.g., Jablon v. Dean Witter & Co.,* 614 F.2d 677, 681 (8th Cir.1980); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith,* 532 F.Supp. 480, 483 (S.D.Ohio 1982).

There is also no hint of Congressional intent regarding private causes of action in the legislative history of statutes regulating the NASD. *Emmons,* 532 F.Supp. at 483. Finally, the conclusion that no section provides private causes of action under the NASD rules is further supported by the explicit provision for private causes of action in sections 9(e), 16(b), and 18 of the 1934 Act. Thus, "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross,* 442 U.S. at 572, 99 S.Ct. at 2487; *Jablon,* 614 F.2d at 681. The statutory scheme regulating securities associations does provide that the NASD may suspend or otherwise discipline its own members, 15 U.S.C. § 78*o* –3(b)(7)–(8), indicating that this was to be the exclusive means of enforcement. *Emmons,* 532 F.Supp. at 483; *Coleman v. D.H. Blair & Co.,* 521 F.Supp. 646, 653–54 (S.D.N.Y. 1981).

The examination of the statute, its legislative history, and its purpose, demonstrate a clear congressional intent not to create a private cause of action for violations of the NASD rules pled by plaintiff. *See, e.g., Walck v. American Stock Exchange, Inc.,* 687 F.2d 778 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (action against stock exchangers for violations of their rules); *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980); *Gustafson v. Strangis,* 572 F.Supp. 1154 (D.Minn.1983) (no private cause of action for the NASD's failure to prevent member misconduct); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 532 F.Supp. 480 (S.D.Ohio 1982). This conclusion holds true even where, as here, fraud is alleged. *Chapman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L.Rep. ¶ 99,419 (D.Md.1983).

*Section 10(b), Rule 10b–5*

■ Counts one and two also allege that defendants' misstatements or omissions in the opening of Corbey's margin account with Becker caused the plaintiff to purchase securities on margin. Becker moves to dismiss on the basis that representations or omissions regarding the operation of a margin account are not made "in connection with" the purchase or sale of a security as required under rule 10b–5. The fraud, taken as alleged in the complaint, is a mixed bag of misrepresentations going both to the risks of financing stock investment through a margin account and the recommendation by Grace of Analyst International, Inc. The fraud alleged need only "touch" on the sale of a security for there to be redress under section 10(b). *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith,* 651 F.2d 615, 619 (9th Cir. 1981). These misrepresentations as alleged state a claim for fraud "in connection with" the sale of securities. *Arrington,* 651 F.2d at 619.

■ Count three alleges deceptive conduct by Grace in engaging in unauthorized trading and then incorrectly informing Corbey that he could not rescind the transaction. Becker moves to dismiss on the basis that claims of unauthorized trading do not involve an element of deception. The deception alleged by Corbey is more than unauthorized trading, however. It is primarily based on the statement that the unauthorized transaction could not be rescinded when, in fact, it could have been. Precisely when the transactions were finalized is a question of intent for the finder of fact. *Lewelling v. First California Co.,* 564 F.2d 1277, 1280 (9th Cir.1977). In this case the fraud could possibly arise from omissions during the course of the transaction or misstatements in response to Corbey's inquiries on recission. These allegations are sufficient to satisfy the requirement that the fraud occur in connection with the purchase or sale of a security. *Id. Pross v. Baird Patrick & Co., Inc.,* 585 F.Supp. 1456 (S.D.N.Y.1984), relied on by Becker for its position is distinguishable because it was decided in the posture of summary judgment. Also, the plaintiff in

that case did state a claim by alleging a material omission in the broker's failure to disclose that it was "making a market" in a particular security. The defendant only subsequently demonstrated on summary judgment that it adequately disclosed its market-maker-status.

Count four alleges a breach of fiduciary duty due to the special relationship between the parties arising under the margin agreement. "Fiduciary duty arises out of a relationship between persons; it goes beyond the mere duty not to lie or deliberately omit material facts." *McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 736 F.2d 1254, 1258 (8th Cir.1984). Whether such a duty exists between a broker and a customer is a question of state law. *Id.* In Minnesota, a claim for breach of fiduciary duty requires a showing of more than a simple broker-customer contract. *See Rude v. Larson*, 296 Minn. 518, 207 N.W.2d 709 (1973) (per curiam); *see also McGinn*, 736 F.2d at 1258. The Minnesota Supreme Court stated in *Rude:*

> Absent a special agreement to the contrary, a licensed broker owes his customer only the duty to exercise due care in executing all instructions expressly given to him by the principal. He is not a guarantor or insurer against loss sustained by his customer.

296 Minn. at 519–20, 207 N.W.2d at 711.

Corbey alleges only that the special agreement arises out of the margin agreement itself. He does not allege that the particular agreement has language indicating the existence of a special relationship or that it is anything other than a standard broker agreement. Under the reasoning of *Rude*, Corbey has failed to specify the content of any special agreement or relationship and thus, does not state a claim for breach of fiduciary duty in count four.

Corbey requests that he be allowed to amend the complaint to identify the contract allegedly breached under count five as being the margin agreement dated July 23, 1983. Becker indicated at the hearing it had no objection. Accordingly, the court will allow plaintiff twenty days in which to amend count five.

Since Corbey is entitled to proceed with claims under section 10(b) and rule 10b–5, the court has jurisdiction over the federal claim in count seven and continues to have jurisdiction over the pendent claims.

## ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Counts one and two insofar as they allege violations of section 15(c)(1), 15 U.S.C. § 78*o* (c)(1), and the rules promulgated thereunder are dismissed with prejudice.

2. Count ten is dismissed with prejudice.

3. Count four is dismissed without prejudice.

4. Plaintiff, John Corbey, is given twenty days from the date of this order to amend count five to allege the contract at issue.

5. In all other respects the motion to dismiss of defendant A.G. Becker is denied.