**Mr. & Mrs. John R. SHOTTO, et al.**

v.

**R. Michael LAUB, Jr., et al.**

**Civ. A. No. M–85–4181.**

United States District Court, D. Maryland.

April 7, 1986.

See also, 635 F.Supp. 835.

Phillips P. O'Shaughnessy, Robert W. Hesselbacher, Jr., and Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Md., for plaintiffs.

David F. Albright, Harry M. Rifkin, and Semmes, Bowen & Semmes, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiffs, Mr. and Mrs. John R. Shotto and Timothy C. Spigelmire, filed this action against defendants, R. Michael Laub, Jr. and Drexel Burnham Lambert Incorporated (Drexel), alleging various claims arising out of defendants' handling of plaintiffs' securities accounts (Paper No. 1). Plaintiffs appear to allege in the 13-count Complaint violations of §§ 5 and 12 of the Securities Act of 1933 (the 1933 Act), as amended, 15 U.S.C. §§ 77e and 77l; [1] Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under § 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), as amended, 15 U.S.C. § 78j(b); Rule 15c2-5, 17 C.F.R. § 240.-15c2-5, promulgated under § 15(c)(1) of the 1934 Act; [2] and the Maryland Securities Act, *Md. Corp. and Assn. Code Ann.,* § 11-703; and common law claims of fraud, breach of fiduciary duty, negligent misrepresentation, and breach of contract.[3]

Plaintiffs have filed an Amendment to Complaint by Interlineation (Paper No. 16). In this amendment, it appears that plaintiffs have added claims under §§ 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77l(2) and 77q(a).[4]

Defendants have filed a Motion for an Order Compelling Arbitration of Plaintiffs' Claims and for a stay of this action pending arbitration (Paper No. 7).[5] Plaintiffs have filed an Opposition to the Motion (Paper No. 12); defendants have filed a Reply (Paper No. 13); plaintiffs have filed a Supplemental Memorandum (Paper No. 14); defendants have filed a Response to Plaintiffs' Supplemental Memorandum (Paper No. 18); and plaintiffs have filed Memorandum in Further Opposition (Paper No. 19). After reviewing the memoranda submitted by the parties, the court concludes that no hearing is necessary. Local Rule 6(G).

## I. Factual Background

The facts as alleged by plaintiffs in the Complaint are as follows. Mr. Shotto alleges that in early 1983, he spoke with Laub, a Senior Vice President of Drexel, concerning investment opportunities. Laub indicated that he would require a discretionary account under his management with Drexel. Shotto stated that he wanted his funds deployed with an overall investment objective of a retirement fund, and Laub represented that if he could not

---

1. In Counts I and VII, plaintiffs allege that defendants sold them an unregistered security or a security without a prospectus. For reasons stated *infra* at pp. 527–528, this court construes these counts as claims arising under §§ 5 and 12 of the 1933 Act.

2. It is not clear from the Complaint whether plaintiffs assert a private right of action under § 15(c)(1) of the 1934 Act or Rule 15c2-5. Since it appears that such a claim is asserted, however, the claim is dismissed, as no such private right of action exists. *See, e.g., SEC v. Seaboard Corp.,* 677 F.2d 1301, 1313–14 (9th Cir.1982); *Corbey v. Grace,* 605 F.Supp. 247, 250 (D.Minn.1985); *Chapman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1983–84 Fed.Sec.L. Rep. (CCH) ¶ 99,419 at 96,409 (D.Md. July 19, 1983); *Pierson v. Dean, Witter, Reynolds, Inc.,* 551 F.Supp. 497, 503 (C.D.Ill.1982), *rev. on other grounds,* 742 F.2d 334 (7th Cir.1984).

3. In addition, the Complaint at various points alleges that conduct of defendants violated certain rules of the New York Stock Exchange or the National Association of Securities Dealers. The general rule in this circuit is that there is no private right of action for a violation of these rules. *E.g., Carras v. Burns,* 516 F.2d 251, 260 (4th Cir.1975); *Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1055, 1062 (D.Md.1985); *Chapman,* 1983–84 Fed.Sec.L.Rep. (CCH) at 96,407.

4. It appears that this recently filed amendment changes significantly the allegations of Counts II and VII. Nevertheless, since defendants had not yet filed a responsive pleading to the Complaint at the time the amendment was filed, Rule 15(a), Fed.R.Civ.P., permits plaintiffs to amend their Complaint once, as a matter of course, without leave of court.

5. Defendants' motion also sought an enlargement of time within which to respond to plaintiffs' Complaint, Request for Production of Documents, and Motion for Summary Judgment. By Order dated January 3, 1986, this request for an extension of time was granted (Paper No. 9).

obtain a 30% per year pre-tax return for Shotto then he was not doing his job. On April 13, 1983, Shotto opened a discretionary account with defendants, and transferred $75,000.00 to defendants.[6] According to Shotto, neither defendant made any disclosure of the risk of a discretionary account, neither sought to obtain an accurate financial picture of the Shottos, neither made material and/or mandatory disclosures respecting options trading, and neither explained the effect of active trading on defendants' commissions. On June 6, 1983, Mr. and Mrs. Shotto transferred another $50,880.88 to defendants.

The Shottos further allege that defendants did not adhere to Rule 15c2–5, 17 C.F.R. § 240.15c2–5, Rule 405 of the New York Stock Exchange (NYSE), and certain other rules of the NYSE and the National Association of Securities Dealers (NASD), because they did not make a reasonable or mandatory disclosure of the risks of option trading and did not obtain the essential minimum financial information with respect to the Shottos. The Shottos allege that defendants placed the Shottos' retirement capital into options and margin accounts without prior disclosure of the risks involved, and that they invested in arbitrage transactions involving intentionally undisclosed risks. The Shottos allege that their account with defendants is now worth approximately $30,000.00.

Plaintiff Spigelmire alleges that he contacted Laub in Pennsylvania in the early fall of 1982 and that Laub made certain representations concerning his track record as a stockbroker. Spigelmire claims that he indicated that his investment objectives were for high income and growth, but claims that defendants never inquired as to the nature of his assets and income, and ignored and returned to Spigelmire a financial plan provided by Spigelmire. Spigelmire alleges that although Laub stated that he would use the discretionary account for options, margins and other transactions, and explained that credit risks existed in margin transactions, he did not make the mandatory risk disclosures respecting these transactions. Spigelmire further alleges that Laub did not explain to him the effect of active trading on defendants' commissions and did not acknowledge that he was not registered as a broker/agent in Maryland.

On October 13, 1982, Spigelmire opened a discretionary account and transferred $27,-500.00 to defendants. According to Spigelmire, neither defendant made any substantive disclosure of the risks of a discretionary account, nor did they seek to obtain an accurate financial picture of Spigelmire. Thereafter, Spigelmire transferred an additional $17,000.00 to defendants as a security deposit. He alleges that defendants have informed him his account is worth only about $3,000.00 at the time of filing suit.

Spigelmire also alleges that neither defendant complied with Rule 15c2–5, Rule 405 of the NYSE, or other NYSE and NASD rules, in that neither made the mandatory credit disclosures to him and neither obtained essential minimum financial information with respect to him.

## II. *Agreements to Arbitrate*

In connection with their accounts with defendants, each of the plaintiffs signed Customer Agreements, which provided in paragraph 16 as follows:

> "SIXTEENTH: Any controversy between you and the undersigned arising out of said account or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, the New York Stock Exchange, Inc., the American Stock Exchange, Inc. or the National Association of Securities Dealers, Inc., as the undersigned may elect. If the undersigned does not make such election, by registered or certified mail addressed to you at 60 Broad Street, New York, N.Y. 10004, Attn: Legal Dept., within five (5) days after demand by you that the un-

---

**6.** It is unclear whether Mrs. Shotto is alleged to have participated in this initial transfer.

dersigned make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Certain decisions by the federal courts have held that if a dispute involves a claim arising under the Securities Act of 1933 or the Securities Exchange Act of 1934, such arbitration clauses are void and unenforceable as applied to such claims and accordingly customers cannot be compelled to arbitrate such a claim. In other contexts, the courts generally enforce arbitration clauses of customers agreements. Therefore, nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any Federal Securities laws. Commodity accounts are governed by the arbitration provisions of the Commodity Customer's Agreement."

(Paper No. 7, Exs. A & B; Paper No. 13, Ex. A).[7]

First, plaintiffs assert that their agreements with Drexel were not in existence at the time that plaintiffs opened their accounts and their claims arose, and that, therefore, those agreements cannot constitute a basis for compulsory arbitration of plaintiffs' claims. Second, Spigelmire asserts that the contract he signed with Drexel is unenforceable, because Laub was not registered with the Maryland Securities Commission until subsequent to the date of the contract. Third, plaintiffs assert that the contracts involved are contracts of adhesion and, therefore, are unenforceable because there was no "meeting of the minds."

### A. The Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., provides that an agreement in writing in a contract to settle by arbitration a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The strong federal policy favoring arbitration has been reaffirmed in several recent opinions of the Supreme Court.

> "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., —— U.S. ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). In addition, as the Supreme Court noted in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), in 9 U.S.C. §§ 3–4, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that the district court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." 105 S.Ct. at 1241 (emphasis in original). Accordingly, under §§ 3 and 4 of the Act, this court must determine whether there exists an agreement to arbitrate any of the claims raised in this action and, if so, those claims must be compelled to arbitration.[8]

---

**7.** Initially, defendants asserted that Mrs. Shotto was bound as a third-party beneficiary to Mr. Shotto's signed agreement. Plaintiffs argued that Mrs. Shotto's claims could not be compelled to arbitration because she signed no agreement. After defendants produced an agreement signed by Mrs. Shotto, plaintiffs withdrew this argument.

**8.** 9 U.S.C. § 3 provides:
"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

■ Furthermore, in determining whether an agreement to arbitrate exists, while this court is empowered to decide questions relating to the validity of the arbitration clause *per se*, the decision on issues going to the enforceability of the entire contract is for the arbitrators. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Court addressed whether the federal court or the arbitrator should resolve whether there was fraud in the inducement of a contract, where the contract provided that controversies arising under it were to be settled by arbitration. The Court adopted the view of the Second Circuit that arbitration clauses, as a matter of federal law, are "separable" from the contracts in which they are embedded, and that while the Federal Arbitration Act permitted the court to decide a claim of fraud in the inducement of the arbitration clause itself, it does not permit the court to consider claims of fraud in the inducement of the contract generally. 388 U.S. at 403–04, 87 S.Ct. at 1805–06.

■ Accordingly, a court, in considering the "making," rather than the enforcement, of an agreement to arbitrate, may decide a claim that there was a lack of mutuality of obligation with respect to the arbitration clause, *see, e.g., Hull v. Norcom, Inc.*, 750 F.2d 1547, 1549 (11th Cir. 1985). Where the contract contains an agreement to arbitrate the controversy, a claim, on the other hand, that there was a mutual cancellation of the entire contract is for the arbitrators. *Wilson Wear, Inc. v. United Merchants & Manufacturers, Inc.*, 713 F.2d 324, 328 (7th Cir.1983). Thus, as in this latter situation, a dispute may be submitted to arbitration without a judicial decision that the contract containing the arbitration clause is valid and enforceable.

*Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir.1983), cert. denied, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391 (5th Cir.1981), the Fifth Circuit held that an appellant was not entitled to have judicially heard her claims that the contract requiring arbitration was obtained by duress and unconscionability, stating: "Her claims regarding duress and unconscionability are ones that, in the event of arbitration, would be decided by an arbitrator, not the district court, since they go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement." 637 F.2d at 398. The court observed that appellant's "allegations that she signed the stock option agreements under circumstances of coercion, confusion, undue influence and duress are related to her reasons for signing the contract as a whole, but are not directly related to the signing of the arbitration clauses *per se.*" 637 F.2d at 398 n. 11.

Similarly, in *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524 (1st Cir.1985), Beneficial Life Ins. Co. argued that an arbitration clause should not be enforced, because it had rescinded the entire contract on the basis of mutual mistake and frustration of purpose. In rejecting the argument that the attempted rescission prevented arbitration, the First Circuit noted that such an argument does not change the doctrine set forth in *Prima Paint* that the arbitration clause is separable from the contract. 774 F.2d at 528. The court concluded:

"Contrary to Beneficial's assertion, the fact that its attempt to rescind the entire agreement is based on the grounds of frustration of purpose rather than on

---

9 U.S.C. § 4 provides, in pertinent part:
"The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

If the making of the arbitration or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

fraud in the inducement does not change applicability of the severability doctrine. The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." *Unionmutual Stock Life Ins. Co.*, 774 F.2d at 529.

.Finally, in *County of Durham v. Richards & Associates, Inc.*, 742 F.2d 811 (4th Cir.1984), the district court had issued an order compelling the parties to arbitrate a dispute over the objection of the county that the agreement to arbitrate was no longer in effect. Although noting that two parties cannot be compelled to arbitrate unless they have contractually agreed to settle their disputes by arbitration, the Fourth Circuit concluded that "[w]hen a limitations question is raised to defeat a motion to compel arbitration, however, the question is one for the arbitrator, not the courts." 742 F.2d at 814–15. Therefore, the district court's order compelling arbitration was affirmed.

### B. *Plaintiffs' Arguments*

▇ In the present case, plaintiffs signed customer agreements which require that disputes arising under them be resolved by arbitration. With respect to plaintiffs' first argument, whether plaintiffs signed the agreements before or after opening their accounts, or even before or after the claims arose, does not change the fact that they signed written agreements to arbitrate claims arising out of their account. Therefore, this argument is without merit. Insofar as plaintiffs assert that the entire contracts are unenforceable as a result of this fact, such argument is one for the arbitrators.

▇ Next, Spigelmire's argument that his agreement is unenforceable because

Laub did not become registered with the Maryland Securities Commission until 11 days after he signed the agreement is also an argument as to the validity of the entire agreement, and since an agreement to arbitrate exists, this is an issue for the arbitrators.

▇ Finally, as to plaintiffs' argument that the entire customer agreements are unenforceable contracts of adhesion, this too is an issue for the arbitrators. *Haydu*, 637 F.2d at 398. To the extent, however, that plaintiffs' argument is that the arbitration clause in the contract is itself unconscionable because of its presence in a contract of adhesion, it appears to be an issue for the court. *Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 61 n. 2 (8th Cir.1984). The court finds, however, that this argument is without merit, for the following reasons.

First, there is no indication that there was any coercion or undue pressure applied to convince plaintiffs to sign the agreements. Second, the agreements contained 18 paragraphs covering less than two pages, each in the same size print which, although small, is readable. Third, and most important, plaintiffs have provided no authority, and this court is aware of none, to support a conclusion that a clause requiring parties to settle their disputes by arbitration unreasonably favors one party over the other.[9] In fact, such a finding would not comport with the strong federal policy favoring arbitration. *See Ilan v. Shearson/American Express, Inc.*, [current] Fed.Sec.L.Rep. (CCH) ¶ 92,427 at 92,-632 (S.D.N.Y. Dec. 20, 1985). Thus, this court concludes that the contractual agreements to arbitrate claims arising out of plaintiffs' securities accounts are not unconscionable contracts of adhesion. *See, e.g., Surman*, 733 F.2d at 61 n. 2; *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, (S.D.N.Y.1986); *Ilan*, [current] Fed.Sec.L.

---

**9.** "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walk-* er-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir.1965), *cited with approval in Malone v. Crown Central Petroleum Corp.*, 474 F.Supp. 306, 308 (D.Md.1979).

Rep. (CCH) at 92,638; *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1511–12 (S.D.N.Y.1985).

■ Accordingly, there exists, with respect to the controversies in this case, agreements to arbitrate which require that this court compel to arbitration all arbitrable claims.[10] At a minimum, arbitration must be compelled as to those claims alleging pendent state common law claims, Counts III, IV, V, VI, IX, X, XI, and XII, and Spigelmire's pendent claim brought under the Maryland Securities Act, Count XIII.

### III. *Arbitrability of Claims under the 1934 Act*

■ Defendants also assert that plaintiffs' claims under § 10(b) of the 1934 Act should be subject to compelled arbitration.[11] Plaintiffs, on the other hand, assert that agreements to arbitrate claims under the 1934 Act are not enforceable.

Initially, this court must determine whether the parties' agreements to arbitrate reach the claims under the Federal Securities Acts. *See Mitsubishi Motors Corp.*, 105 S.Ct. at 3355. Plaintiffs assert that the language of the arbitration clause does not require arbitration of plaintiffs' Federal Securities claims, because it recognized the parties' right to pursue their statutory remedies in court. This argument is without merit.

Although the arbitration clause states that certain decisions have held that arbitration clauses are void and unenforceable as to claims under the Federal Securities Acts, it also notes that "[i]n other contexts, the courts generally enforce arbitration clauses." The clause continues that "noth-

ing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any Federal Securities laws." It is clear that this language is intended to advise the customer of the state of the law and put him on notice that he may have legal rights under the Federal Securities laws which preclude the parties' pre-dispute agreement to arbitrate from applying to claims under those laws. It does not, however, preclude arbitration of claims under the Federal Securities laws if those laws do not themselves preclude enforcement of a pre-dispute agreement to arbitrate. *See Chandler v. Drexel Burnham Lambert, Inc.*, 633 F.Supp. 760, 762 (N.D. Ga.1985); *West v. Drexel Burnham Lambert, Inc.*, 623 F.Supp. 26 (W.D.Wash.1985).

Therefore, this court holds that the arbitration clauses in question, because they extend to "[a]ny controversy ... arising out of said account or relating to this contract or the breach thereof," cover all claims alleged by plaintiffs, including those alleged under the federal securities acts. Next, this court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration" of plaintiffs' 1934 Act claims. *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355.

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that an agreement to arbitrate claims was unenforceable with respect to claims arising under § 12(2) of the 1933 Act. The Court's holding was based on three interrelated provisions of the 1933 Act, §§ 12(2), 14, and 22, 15 U.S.C. §§ 77*l*(2), 77n, and 77v. Section 12(2)[12]

---

**10.** Since the Supreme Court in *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), has rejected the "intertwining doctrine," there can be no question that this court must sever and compel arbitration of all arbitrable claims, while reserving jurisdiction over those claims not subject to compelled arbitration.

**11.** As noted previously, *supra* n. 2, insofar as plaintiffs assert a private right of action under Rule 15c2–5, 17 C.F.R. 240.15c2–5, plaintiffs fail

to state a claim for which they are entitled to relief. Thus, plaintiffs' only claims arising under the 1934 Act are pursuant to § 10(b) and Rule 10b–5.

**12.** Section 12(2), 15 U.S.C. § 77*l*(2), provides as follows:

"Any person who—

. . . . .

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of

provides an express cause of action for certain alleged violations of the 1933 Act, providing "a special right to recover for misrepresentation which differs substantially from the common-law action." 346 U.S. at 431. Section 14, the nonwaiver provision, declares void "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter." 15 U.S.C. § 77n. Section 22(a) provides for state and federal court jurisdiction, nationwide service of process, a wide choice of venue, and prohibits removal of cases filed in state court. 15 U.S.C. § 77v(a). Although noting the strong policy favoring arbitration under the Federal Arbitration Act, the Court in *Wilko* concluded that the agreement to arbitrate was a stipulation by which the security buyer waived his right under § 12(2) to sue in courts, and that this stipulation was void under § 14 of the 1933 Act. 346 U.S. at 434–37, 74 S.Ct. at 186–87.

Lower federal courts have often ruled that the finding in *Wilko* should be extended to prohibit agreements to arbitrate claims arising under § 10(b) of the 1934 Act and Rule 10b–5. *See, e.g., Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 (8th Cir.1984); *De Lancie v. Birr, Wilson & Co.,* 648 F.2d 1255, 1258–59 (9th Cir.1981); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1030 (6th Cir. 1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823, 827–29 (10th Cir.1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith,* 558 F.2d 831, 833–35 (7th Cir.1977); *Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Sibley v. Tandy*

*Corp.,* 543 F.2d 540, 543 and n. 3 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith,* 538 F.2d 532, 536–37 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976).

In *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), however, the Supreme Court noted the differences between the two statutes. and, without deciding the issue, expressed reservations about the extension of *Wilko* to 1934 Act claims. The court explained that in *Wilko* the action was based on § 12(2) of the 1933 Act, which provides a defrauded purchaser with a "special right" of a private remedy for civil liability, but that the 1934 Act has no statutory counterpart to § 12(2) of the 1933 Act. 417 U.S. at 513, 94 S.Ct. at 2454. The Court contrasted the express right of action provided by the 1933 Act with the judicially implied cause of action available under § 10(b) of the 1934 Act and Rule 10b–5. 417 U.S. at 513–14, 94 S.Ct. at 2454. In addition, the Court noted the broad jurisdiction of the 1933 Act, 15 U.S.C. § 77v, as compared with the 1934 Act, which gives "exclusive jurisdiction" to the federal district courts. 15 U.S.C. § 78aa.

Recently, in *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court again placed in question the applicability of *Wilko* to claims under the 1934 Act. Although declining again to resolve the issue, the Court reviewed the arguments raised in *Scherk.* 105 S.Ct. at 1240 n. 1. In a concurring opinion, Justice White, after

---

this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the

burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

noting his agreement that the issue was not before the Court, continued that the arbitrability of claims under the 1934 Act "is a matter of substantial doubt." 105 S.Ct. at 1244. Justice White continued:

"*Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act. While § 29 of that Act, 15 U.S.C. § 78cc(a), is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts. 15 U.S.C. § 78aa. More important, the cause of action under § 10(b) and Rule 10b-5, involved here, is implied rather than express. See *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380, and nn. 9-10, 103 S.Ct. 683, 686-87, and nn. 9-10, 74 L.Ed.2d 548 (1983). The phrase 'waive compliance with any *provision of this chapter*,' 15 U.S.C. § 78cc(a) (emphasis added), is thus literally inapplicable. Moreover, *Wilko's* solicitude for the federal cause of action—the 'special right' established by Congress, 346 U.S., at 431, 74 S.Ct., at 184—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action.

The Court has expressed these reservations before. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 513–514, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974). I reiterate them to emphasize that the question remains open and the contrary holdings of the lower courts must be viewed with some doubt."

105 S.Ct. at 1244 (footnote omitted).

Following *Byrd,* numerous courts have reviewed this issue with renewed fervor, and a seemingly overwhelming majority have concluded to be erroneous previous holdings finding 1934 Act claims not subject to arbitration even if an arbitration agreement exists. *See, e.g., Brener, supra,* 628 F.Supp. 442; *Intre Sport Ltd. v. Kidder, Peabody & Co.,* 625 F.Supp. 1303 (S.D.N.Y.1985); *Ilan,* [current] Fed.Sec.L. Rep. (CCH) at 92,637; *Moncrieff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 623

F.Supp. 1005 (E.D.Mich.1985); *Finkle and Ross,* 622 F.Supp. at 1508–09; *Chandler, supra,* 633 F.Supp. at 763; *McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384 (S.D.N.Y.1985); *Ross v. Mathis,* 624 F.Supp. 110 (N.D.Ga.1985); *Land v. Dean Witter Reynolds, Inc.,* 617 F.Supp. 52 (E.D.Va.1985); *Pruzan v. Paine, Webber, Jackson & Curtis, Inc.* (No. C–84–2016A) (N.D.Ga. Aug. 28, 1985); *West, supra,* 623 F.Supp. 26; *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146 (D.Vt.1985); *Boyd v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 614 F.Supp. 940 (S.D.Fla. 1985); *Dees v. Distenfield,* 618 F.Supp. 123 (C.D.Cal.1985); *Finn v. Davis,* 610 F.Supp. 1079 (S.D.Fla.1985); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [current] Fed.Sec.L.Rep. (CCH) ¶ 92,269 (N.D.Ga. May 16, 1985); *Niven v. Dean Witter Reynolds, Inc.,* 1984–5 Fed.Sec.L. Rep. (CCH) ¶ 92,059 (M.D.Fla. Mar. 28, 1985). While a number of district courts have, subsequent to *Byrd,* continued to rule that *Wilko* applies to claims arising under § 10(b) of the 1934 Act and Rule 10b-5, these courts have almost all based such holdings on an express finding that binding pre-*Byrd* precedent on this issue exists in their circuit, which they may not disregard absent a clear decision finding such claims arbitrable by either the Supreme Court or the Court of Appeals for their circuit. *See, e.g., Leone v. Advest, Inc.,* 624 F.Supp. 297 (S.D.N.Y.1985); *Baker v. Powell,* [current] Fed.Sec.L.Rep. (CCH) ¶ 92,407 (D.N.J. Nov. 26, 1985); *Stone & Associates v. Drexel Burnham Lambert, Inc.* (No. 85–C–6927) (N.D.Ill. Nov. 15, 1985) [Available on WESTLAW, DCTU database]; *Lamb v. Legg Mason Wood Walker, Inc.* (No. 85–1316) (E.D.Pa. Sept. 16, 1985); *Scharp v. Cralin & Co.,* 617 F.Supp. 476 (S.D.Fla.1985); *Erlbaum v. Prudential-Bache Securities, Inc.* (No. 84– 5541) (E.D.Pa. Aug. 9, 1985); *Webb v. R. Rowland & Co.,* 613 F.Supp. 1123 (E.D.Mo. 1985); *Concanon v. Smith, Barney, Harris, Upham & Co.,* 612 F.Supp. 996 (S.D. Fla.1985).[13] Because neither the Supreme

Court nor the Fourth Circuit has ruled on the issue, there is no precedent which is binding upon this court.

Based on the distinctions noted in *Scherk* and *Byrd* as to claims under § 12(2) of the 1933 Act and claims under the 1934 Act, this court concludes that the claims herein under § 10(b) of the 1934 Act and Rule 10b–5 should be compelled to arbitration. In reaching this conclusion, this court finds most significant the difference between applying the nonwaiver provision in § 14 of the 1933 Act to bar compelled arbitration of claims arising under § 12(2) of the 1934 Act, which expressly provides for a cause of action, and applying the nonwaiver provision in § 29 of the 1934 Act to preclude compelled arbitration of implied causes of action under § 10(b) of the 1934 Act and Rule 10b–5. As Justice White noted in *Byrd*, while § 29 of the 1934 Act is equivalent to § 14 of the 1933 Act, its language is "literally inapplicable" to a cause of action under § 10(b) and Rule 10b–5 because that cause of action is implied rather than express. *Byrd*, 105 S.Ct. at 1244. Furthermore, because the cause of action under § 10(b) and Rule 10b–5 is implied rather than express, there is no "special right" created by Congress as there was in *Wilko*. *Wilko*, 346 U.S. at 431, 74 S.Ct. at 184. Rather, the remedy provided under § 10(b) and Rule 10b–5 was created by the courts, and is, therefore, "judicially implied and not so different from the common law action." *Byrd*, 105 S.Ct. at 1244 (White, J., concurring). *See also Intre Sport Ltd.*, 625 F.Supp. at 1314; *Dees*, 618 F.Supp. at 125–26.

This conclusion is also supported by the renewed emphasis placed on the Federal Arbitration Act in *Byrd* and other recent Supreme Court decisions. *See Mitsubishi Motors Corp.*, 105 S.Ct. 3346; *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memo-*

*rial Hospital*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765. In determining whether particular claims are arbitrable, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 941. "The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements into which parties had entered, ... at least absent a countervailing policy manifested in another federal statute." *Byrd*, 105 S.Ct. at 1242–43.

As the Court noted in *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355, there is no reason to conduct this determination differently simply · because the party bound by the arbitration agreement asserts claims based on statutory causes of action. This court is not aware of anything in the legislative history of the 1934 Act which would indicate that Congress intended to preclude a waiver of rights not expressly provided for in the Act. *See Intre Sport Ltd.*, 625 F.Supp. at 1314–15; *Finkle and Ross*, 622 F.Supp. at 1509; *Chandler, supra*, 633 F.Supp. at 763.

Finally, plaintiffs assert that these claims may not be compelled to arbitration, arguing that to the extent the contracts at issue may be construed to require arbitration of any of the federal securities law claims, the contractual provision violates Rule 15c2–2, 17 C.F.R. § 240.15c2–2, promulgated by the Securities and Exchange Commission. Rule 15c2–2(a) provides:

"It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under ːhe Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer."

---

**13.** On the other hand, several courts have found that following *Byrd*, previous rulings extending *Wilko* to 1934 Act claims are no longer viable, and have, therefore, held contrary to what would otherwise be binding precedent. *See,*

*e.g., Ilan*, [current] Fed.Sec.L.Rep. (CCH) at 92,-637; *Moncrieff*, 623 F.Supp. at 1007–08; *McMahon*, 618 F.Supp. at 389; *Jarvis*, 614 F.Supp. at 1152.

Some courts have relied, at least in part, upon Rule 15c2-2 in refusing to compel arbitration of claims arising under the 1934 Act. *See Blomquist v. Churchill*, 633 F.Supp. 131 (D.S.C.1985) ("This court continues to be persuaded that 17 C.F.R. § 240.15c2-2 prohibits the defendants from compelling arbitration in this case under the predispute arbitration clause contained in its agreement with plaintiffs."); *Levendag v. Churchill*, 623 F.Supp. 620 (D.S.C.1985) (following *Blomquist*). This court, however, cannot agree.

At the time when the SEC promulgated Rule 15c2-2, courts were consistently extending *Wilko's* holding to claims arising under the 1934 Act. The purpose of this rule was not intended to alter existing law; rather, it was to ensure that public customers signing broker-dealer customer agreements would not be misled as to the enforceability of predispute arbitration clauses. *See* 48 Fed.Reg. 53404 (1983); *Finkle and Ross*, 622 F.Supp. at 1510. "The provision required by Rule 15c2-2 merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation; it does not create, nor does it preserve rights to litigate in federal courts." *Finkle and Ross*, 622 F.Supp. at 1510. Thus, it has been held that Rule 15c2-2 is procedural, providing only for notice to the customer, and does not act substantively to prevent arbitration of all federal securities claims. *Erlbaum, supra*, (slip op.).

 Furthermore, an agency is empowered only "to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976) (quoting *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305 (1965)). The SEC "has no

authority to enlarge or restrict the forums legally available to a litigant or to invalidate arbitration clauses that are enforceable under the Act." *Pruzan, supra*, (slip op. at 6). Thus, this court having concluded that plaintiffs' claims under § 10(b) of the 1934 Act and Rule 10b-5 are arbitrable, such arbitrability is not affected by Rule 15c2-2.

### IV. *Claims Under the 1933 Act*

Initially, defendants contended that although the Complaint refers to certain definitional sections of the 1933 Act, it asserts no claim for relief under the 1933 Act. Plaintiffs, however, assert that Counts I and VII allege that defendants violated § 5 of the 1933 Act, 15 U.S.C. § 77e, by selling to plaintiffs securities which were unregistered and were not accompanied by a prospectus. While defendants are correct in their assertion that the Complaint does not state any provisions under the 1933 Act upon which plaintiffs seek relief, and, in this respect, the Complaint could have been drafted somewhat more artfully, it appears to the court that plaintiffs at least intend in Counts I and VII to allege claims under the 1933 Act.

Paragraphs 16 and 40 of Counts I and VII state:

"Laub and Drexel sold an unregistered security to [the plaintiffs]. No exemption from registration applies. Or, in the alternative, sold a registered security to [the plaintiffs] without a prospectus."

(Paper No. 1, ¶¶ 16, 40). The selling of an unregistered security, or a registered security without a prospectus, by means of interstate commerce or in the mails, is prohibited by § 5 of the 1933 Act, 15 U.S.C. § 77e. Moreover, § 12(1) of the 1933 Act, 15 U.S.C. § 77l, provides an express remedy, in the form of a civil action for damages, against one who offers or sells a security in violation of § 5.[14] Accordingly,

---

14. Section 12(1), 15 U.S.C. § 77l(1), provides:
"Any person who—
(1) offers or sells a security in violation of section 77e of this title, shall be liable to the person purchasing such security from him,

who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such

in Counts I and VII, it appears that plaintiffs' intention is to allege a cause of action under §§ 5 and 12 of the 1933 Act.[15]

In addition, however, plaintiffs have recently filed an Amendment to Complaint by Interlineation, in which they amend Counts II and VII. The original Complaint alleged in Counts II and VII that defendants' conduct "violated Rules 10b–5 and 15c2–5 of the Securities Exchange Act of 1934" (sic). As amended, however, those counts also allege that the same conduct violates "15 U.S.C. Sections 77l(2) and 77q of the Securities Act of 1933." Thus, the Complaint now alleges claims under §§ 12(2) and 17 of the 1933 Act as well.

Defendants next assert that plaintiffs' claims under §§ 5, 12(1) and 12(2) are barred by the limitations period set forth in § 13 of the 1933 Act, 15 U.S.C. § 77m. Because defendants only recently filed, contemporaneously with their Memorandum in Response to Plaintiffs' Supplemental Memorandum, a Motion to Dismiss (Paper No. 17), the court will not rule on this issue until the time for the parties to file responsive memoranda has expired.

With respect to plaintiffs' claims under § 17 of the 1933 Act, defendants request that these claims be dismissed, asserting that § 17(a) provides no express right of action, and that there is no indication that Congress intended to provide a private right of action under this section. Defendants contend that, as a result of certain language in *SEC v. American Realty Trust*, 586 F.2d 1001 (4th Cir.1978), this court should conclude that the ruling of *Newman v. Prior*, 518 F.2d 97 (4th Cir. 1975), upholding a private right of action under § 17(a), is no longer valid authority in this Circuit. As this court, however, has recently noted:

> "There does appear to be a trend to deny a private right of action among recent cases which have examined the

issue in light of the test for implying a private right of action set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 and its progeny. Nevertheless, this court is bound to follow the Fourth Circuit on this issue, as have other courts in this circuit. *See, e.g., Rocco v. Dusseau*, No. N–82–2848 (oral opinion issued Jan. 23, 1984); *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith*, 464 F.Supp. 528, 537 (D.Md.1978); *Reid v. Madison*, 438 F.Supp. 332, 333 (E.D.Va. 1977). Despite the dicta in *SEC v. American Realty Trust*, 586 F.2d at 1006, to the contrary, the holding in *Newman* that a private right of action exists under § 17(a) remains the law in this circuit."

*Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. 1055, 1063 (D.Md. 1985). Thus, this argument is without merit.

Defendants further assert that, unlike claims under § 12 of the 1933 Act, claims under § 17(a) of this Act are arbitrable. As with § 10(b) of the 1934 Act, the remedy provided under § 17(a) of the 1933 Act is judicially implied, and is, therefore, similar to a common law cause of action. For this reason, it appears that the nonwaiver provision in § 14 of the 1933 Act is not literally applicable to the cause of action available to plaintiffs under § 17(a) of the 1933 Act. In addition, § 17(a) and § 10(b) are "virtually identical." *Brener, supra*, 628 F.Supp. 442, (citing *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied sub nom., Goldberg v. Kirshner*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979)). It would be inconsistent to require a plaintiff to pursue remedies under § 10(b) and Rule 10b–5 through arbitration, yet, simultaneously permit the plaintiff to pursue actions in federal court under § 17(a) for the same alleged conduct. Therefore, this court concludes that plain-

---

security, or for damages if he no longer owns the security."

**15.** Although this court finds that plaintiffs intend to assert claims under the 1933 Act, it does not find that such claims have been properly

pled. For example, it does not appear that plaintiffs have alleged that defendants made use of any instruments of interstate commerce or the mails, as is required to show a violation of 15 U.S.C. § 77e.

tiffs' claims arising under § 17(a) of the 1933 Act are arbitrable. *See Brener, supra,* 628 F.Supp. 442.

## V. *Stay*

Finally, as this court has concluded that some, but not all, of plaintiffs' claims are subject to arbitration, this court must sever and compel arbitration of the arbitrable claims. *See Byrd,* 105 S.Ct. at 1244. This court must, therefore, determine whether proceedings in either the arbitration or this lawsuit should be stayed pending resolution of the other.

In *Byrd,* 105 S.Ct. at 1243, the Court rejected an argument that a stay of arbitration proceedings is necessary to protect the federal interests in the federal court proceeding. In his concurring opinion, Justice White stated as follows:

> "The Court's opinion makes clear that a District Court should not stay arbitration, or refuse to compel it at all, for fear of its preclusive effect. And I can perceive few, if any, other possible reasons for staying the arbitration pending the outcome of the lawsuit. Belated enforcement of the arbitration clause, though a less substantial interference than a refusal to enforce it at all, nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement. In addition, once it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed."

Thus, this court concludes that there is no reason to stay either proceedings. *See also Brown v. E.F. Hutton & Co.,* 610 F.Supp. 76, 79 (S.D.Fla.1985); *Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1054, 1055 (S.D.Fla.1985).

In conclusion, this court finds that plaintiffs' claims in Counts II (to the extent it alleges claims arising under § 10(b) of the 1934 Act, Rule 10b–5, and § 17(a) of the 1933 Act, III, IV, V, VI, VIII (to the extent it asserts claims arising under § 10(b) of the 1934 Act, Rule 10b–5, and § 17(a) of the 1933 Act), IX, X, XI, XII, and XIII,

must be resolved through arbitration as set forth in the Customer Agreements entered into between the parties, pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act. This court retains jurisdiction over the claims alleged in Counts I, II (to the extent it alleges claims arising under § 12(2) of the 1933 Act), VII, and VIII (to the extent it alleges claims arising under § 12(2) of the 1933 Act).

Accordingly, it is this 7th day of April, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' Motion for an Order Compelling Arbitration of Plaintiffs' Claims is hereby GRANTED in part and DENIED in part as set forth in this Memorandum and Order.

2. That defendants' motion for a stay is DENIED.