Laverne **JONES**, et al.

v.

**GENUS CREDIT MANAGEMENT CORPORATION**, et al.

**No. CIV. JFM–04–1036.**

United States District Court, D. Maryland.

Jan. 31, 2005.

Jack C. Sando, Law Office of Jack C. Sando, Bethesda, MD, G. Oliver Koppell, John F. Duane, Law Offices of G. Oliver Koppell, Joseph Seth Tusa, Whalen and Tusa PC, New York City, for Plaintiffs.

Brian L. Moffet, Gordon Feinblatt Rothman Hoffberger and Hollander LLC,

Pamela Merlis Conover, Whiteford Taylor and Preston, Baltimore, MD, Michael Geoffrey Abelow, Heller Ehrman White and McAuliffe LLP, Washington, DC, Felix Gavi Luna, Leonard Jamie Feldman, Heller Ehrman White and McAuliffe LLP, Seattle, WA, for Defendants.

### MEMORANDUM

MOTZ, District Judge.

Plaintiffs enrolled in a Debt Management Plan with Genus Credit Management Corp. They have now brought this suit against Genus and various other entities that they allege are affiliates of Genus and conspired with it to commit various violations of federal and state law. Plaintiffs assert individual claims on their own behalf and class claims on behalf of others similarly situated with them.

Defendants have filed a motion to dismiss on the ground that plaintiffs' agreements with Genus contained a valid arbitration clause. Alternatively, defendants contend that if this action is permitted to proceed, plaintiffs' class action allegations should be stricken because the arbitration clause also contained a waiver of the right to proceed in a class action.[1] The motion raises significant policy issues about which there can be fair debate. However, I am satisfied that under existing case law, defendants' contentions are well founded. Therefore, their motion will be granted.

Because of the exigencies of my present schedule, I will merely address the issues in a summary manner.[2]

### I. *Did Plaintiffs Agree to Arbitrate?*

The arbitration clause upon which defendants rely is contained in a document styled "Terms of Debt Management—EasyPay." This document was incorporated by reference into "EasyPay Client Agreements" signed by plaintiffs, but it was not itself signed by them.

■ Plaintiffs first contend that the record does not establish that the "Terms of Debt Management" document was ever provided to them. The contention is unavailing. Defendants have submitted an affidavit in support of their motion to dismiss averring that plaintiffs did receive a "Terms of Debt Management" document identical to one attached as an exhibit to the affidavit. Defendants have also explained that the reason Genus does not have copies of the documents with plaintiffs' names on them is that the documents are electronically generated, sent out as a matter of course, and *not* stored for each client's account (because, to do so, would unnecessarily use computer memory). In response, plaintiffs have not submitted any affidavit denying that they received the "Terms of Debt Management" document. Accordingly, defendants have met their burden of proof on the issue.

■ Plaintiffs next contend that assuming they received copies of the documents, they nevertheless did not agree to the arbitration clause because it was not con-

---

1. Defendants further argue that the claims of plaintiffs Jones and Rawlings should be dismissed because they filed for bankruptcy and the bankruptcy trustees had not abandoned their claims before this action was filed. Although this is true, the trustees now have abandoned the claims. I am satisfied that the record does not show that either Jones or Rawlings made any misrepresentations during the course of the bankruptcy proceedings in order to obtain the trustees' decision to

abandon. Accordingly, I do not find defendants' argument on this point to be persuasive.

2. Underlying the analysis of all of the issues presented is the question of whether federal or state law applies. However, because it appears that there is no material divergence between federal and state law on any of the issues, I need not decide that question.

tained in the "EasyPay Client Agreements" that they signed. In support of this contention, they rely upon *Shaffer v. ACS Government Services, Inc.*, 321 F.Supp.2d 682 (D.Md.2004), in which Judge Williams of this court held that an employee had not agreed to an arbitration clause contained on page fifty-six of a seventy-one page employee guidebook. The clause also "conspicuously fail[ed] to mention that employees are required to submit employment—related matters to arbitration." *Id.* at 687. In this case, although the arbitration clause was included in a document that was incorporated by reference into the document signed by plaintiffs, both documents were only one page in length. Moreover, although the clause was not in bold or otherwise emphasized, its language clearly states that any dispute between the parties "shall be settled solely and exclusively by binding arbitration." [3]

## II. Is the Arbitration Provision Unconscionable? [4]

 There obviously is a great disparity between the bargaining power of the parties. Plaintiffs are consumers suffering from the burden of heavy debt, and Genus is a sophisticated business entity. Therefore, I find that what has been called "procedural unconscionability" exists. *See* 8 Williston on Contracts § 18:10 (4th ed.2004). I likewise find that the arbitration clause was part of a contract of adhesion because it was "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it basis' to the weaker party who ha[d] no real opportunity to bargain about its terms." *Meyer v. State Farm Fire & Cas. Co.*, 85 Md.App. 83, 582 A.2d 275, 278 (1990) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. b (2004)).

Plaintiffs do not assert, however, that mere disparity in bargaining power is a valid basis for invalidating the agreements into which they entered. To the contrary, they appear to recognize that they must also establish "substantive unconscionability," that is the imposition of "contract terms which are unreasonably favorable to the ... [dominant] party." *Shotto v. Laub*, 632 F.Supp. 516, 522 n. 9 (D.Md. 1986). *See generally* 8 Williston on Contracts § 18:10 (4th ed.2004). To meet this burden, they contend that the provisions of the arbitration clause requiring plaintiffs

---

**3.** I am not suggesting that plaintiffs actually read the arbitration clause but only that they must be deemed to have done so. I also recognize that an appellate court might hold that where the bargaining positions between the parties are greatly disparate, an arbitration and/or waiver of class action clause is enforceable only if it is highlighted. Although such a holding might be satisfying to the conscience, its practical effect would be dubious, particularly where, as here, the weaker party is in an exceedingly vulnerable position Would persons like plaintiffs seeking to escape from heavy debt, harassing creditors, and attendant depression likely to be dissuaded from entering into debt management agreements simply because their attention is drawn to the presence of an arbitration/waiver of class action clause in the agreements? In my view, the more substantial question is whether such clauses are unconscionable as a

matter of law, and as to that question, both the Fourth Circuit and the Maryland Court of Appeals has spoken, at least in the context of fee-shifting claims.

**4.** Although plaintiffs claim that the agreements of which the arbitration clause were a part were obtained by fraud, they apparently concede that they cannot circumvent the arbitration clause on the basis of this allegation. Rather, they would have to allege (as they have not done) that the arbitration clause in particular was induced by fraud. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999); *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656, 665 (2003).

to comply with the commercial arbitration rules of the American Arbitration Association and to participate in the arbitration proceedings in Columbia, Maryland, establish substantive unconscionability.[5]

Neither of these contentions is persuasive. Rule R–1 of the AAA's Commercial Arbitration Rules expressly makes the AAA's Supplementary Procedures for Consumer-Related Disputes applicable in cases such as this, and under the Supplementary Procedures a consumer's maximum cost is $125. *See* Rule C–8 (defining fees). Thus, the cost of arbitration here cannot be said to be prohibitive. *See generally Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Shankle v. B–G Maint. Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1234–35 (10th Cir.1999). Likewise, the mere fact that the arbitration clause requires that the arbitration proceedings be held at a location distant from plaintiffs' residences is not a sufficient basis for invalidating them. *See generally Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).[6]

III. *Does This Dispute Fall Within the Ambit of the Arbitration Clause?*

█ Plaintiffs contend that because defendants' allegedly unlawful conduct results from their misstatements and omissions made in solicitations, advertising, and promises before plaintiffs signed any agreement with Genus, their claims are not ones "arising out of this Agreement" within the meaning of the arbitration clause. In light of the expansive reading that is to be given to arbitration clauses, *see generally Long v. Silver,* 248 F.3d 309 (4th Cir.2001); *Nowak v. NAHB Research Ctr., Inc.,* 157 Md.App. 24, 848 A.2d 705, 712 (2004), this contention is questionable. In any event, the arbitration clause also requires arbitration of "[a]ny dispute between us that cannot be amicably resolved . . . ." This language self-evidently is broad enough to cover the claims asserted by plaintiffs in this action.

IV. *Are the Defendants Other Than Genus Who Were Not Parties to the Arbitration Clause Entitled to Enforce Its Terms?*

█ The law is clear that a non-signatory to an arbitration agreement may enforce (or be bound by) the agreement's terms where the claims against the signatory and the non-signatory "are based on the same facts and are inherently inseparable." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d

---

**5.** Some commentators have suggested that substantive unconscionability should be found whenever an arbitration clause that forecloses class remedies might effectively "cloak corporate wrongdoing in secrecy." *See, e.g.,* Robert B. Kershaw, *Mandatory Binding Arbitration—Goliath's New Offense,* 36–AUG Md. B.J. 28, 32 (2003). However, where, as here, plaintiffs asset claims under fee-shifting statutes that provide an incentive for an attorney to take on their case, this concern is lessened.

**6.** To fortify their position in defeating plaintiffs' claims of unconscionability, defendants have also offered to pay plaintiffs' arbitration costs (small though they are) and to arbitrate the dispute in New York (where two of the plaintiffs live) and in North Dakota (where two of the other plaintiffs live). Other courts have indicated that such offers are effective. *See, e.g., Dobbins v. Hawk's Enters.,* 198 F.3d 715, 717 (8th Cir.1999); *Rivera v. Thomas,* 316 F.Supp.2d 256, 261 (D.Md.2004); *Bank v. WorldCom, Inc.,* 2002 No. 122484100, 2002 WL 171629, at *7–8 (N.Y.Sup.Ct. Jan. 24, 2002). However, if that were defendants' sole defense, I would have difficulty with it because the very presence of contractual requirements to conduct costly arbitration in a distant venue might discourage the assertion of consumers' claims. *Cf. Deutsche Post Global Mail, Ltd. v. Conrad,* 292 F.Supp.2d 748, 754 n. 3 (D.Md.2003) (expressing a similar concern in the context of an overly broad covenant not to compete).

411, 417 (4th Cir.2000) (quoting *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320–21 (4th Cir.1988)). *See also Long,* 248 F.3d at 320; *Akpan v. Bank of Am.,* Civ. No. AW–04–1544, slip op. (D.Md. Sept. 27, 2004). Here, plaintiffs allege "intertwining relationships" and a conspiracy among defendants. These allegations are more than sufficient to permit the non-signatory defendants to invoke the arbitration provision in the Genus agreements.

V. *Assuming That This Action is Not Dismissed In Favor of Arbitration, Should the Class Allegations be Stricken?* [7]

█ In addition to requiring the parties to arbitrate any dispute between them, the arbitration clause also requires plaintiffs to "not participate in any class action law suit in connection with any such dispute . . . ." The Fourth Circuit has directly held that such a waiver is valid in a consumer case, such as this one, in which claims are asserted under fee-shifting statutes. *See Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 638 (4th Cir.2002). Likewise, by enforcing a forum selection clause requiring the plaintiff to arbitrate his claims in Virginia where a class action remedy was not available to him, the Maryland Court of Appeals necessarily found that Maryland law does not invalidate such a waiver as a matter of public policy. Accordingly, assuming that plaintiffs are not required to submit their claims to arbitration, their class action allegations must be stricken.

A separate order granting defendants' motion to dismiss is being entered herewith.

7. In light of my ruling that plaintiffs' claims must all be submitted to arbitration, I need not reach the question of striking the class action allegations. I am doing so, however, for two reasons. First, the requirement in the arbitration clause that plaintiffs waived their right to participate in a class action may be

ORDER

For the reasons stated in the accompanying memorandum, it is, this 31st day of January 2005

ORDERED

1. Defendants' motion to dismiss is granted; and

2. This action is dismissed and plaintiffs are directed to arbitrate their claims against defendants (if they choose to pursue them).

considered to bear upon the question of whether the clause is unconscionable. *See* footnote 5, *supra.* Second, my ruling on the issue may expedite the progress of this litigation in the event that my ruling on the arbitration question is reversed on appeal.